IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEFFRY PESEK, individually and in his capacity )
as agent for William Mowery, beneficiary of )
Trust #1078927 held by Chicago Title Land Co., )
and SEBASTIAN MAYNEZ, individually, )
)
Plaintiffs, )
) No. 04 C 4525
v. )
) Judge Robert W. Gettleman
DAVID DONAHUE, RAMIRO GONZALEZ, )
ANTHONY BRUNO, DENNIS BOTH, MARY )
LYNN CHLADA, and the TOWN OF CICERO, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jeffrey Pesek, individually and in his capacity as agent for William Mowery, beneficiary of Trust #1078927, and Sebastian Maynez, have brought a ten count first amended complaint against: The Town of Cicero "(Cicero")"; its President Ramiro Gonzalez; Economic Development Consultant, Anthony Bruno; and Director of Code Enforcement, Mary Lynn Chlada. Also named as defendants are David Donahue and Dennis Both, both of whom are alleged to be officers, agents and/or employees of Cicero acting within the scope of their employment during the relevant time period. The gist of plaintiffs' complaint is that Cicero and the individual defendants used the town's building code in an effort to obtain plaintiffs' property or to otherwise punish plaintiffs. Counts I through IV, brought pursuant to 42 U.S.C. § 1983, allege violations of procedural due process, substantive due process, equal protection of the laws, and conspiracy to violate plaintiffs' civil rights, respectively. Count V asserts a Monell claim

against Cicero.[1] Counts VI through VIII are state law claims against all defendants, alleging conspiracy, abuse of process and misuse of process, respectively. Count IX is brought against Cicero pursuant to 745 ILCS 10/9-102, alleging that Cicero is liable and responsible for any judgment against the individual defendants. Count X is brought under Illinois common law seeking an injunction preventing defendants from proceeding with the condemnation and demolition of plaintiffs' property.

Cicero has filed a counterclaim against plaintiff pursuant to state law, seeking fines and an order allowing it to repair the property.

Defendants have moved to dismiss the complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Specifically, defendants argue that federal counts I through V are barred by the Williamson ripeness doctrine[2], and that the court should decline supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c)(3). Plaintiffs have moved to dismiss the counterclaim for lack of jurisdiction. For the reasons set forth below, defendants' motion to dismiss the complaint is granted in part and denied in part. Plaintiffs' motion to dismiss the counterclaim is denied.

## FACTS

Plaintiffs claim to be the contract purchasers of a building located at 6001 to 6003 West Roosevelt Road, Cicero (the "Property"). In April 2004 defendant Bruno contacted Pesek's attorney, Michael Delgado, expressing an interest on behalf of Cicero in the redevelopment of the

---

[1] See Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).

[2] See Williamson County Reg' Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985).

2

Property. Delgado met with defendants Bruno and Donahue who again told Delgado that the town was interested in the redevelopment. A transfer of a liquor license from one of Pesek's other properties to another location in Cicero was also discussed. Delgado told Bruno and Donahue that Pesek had been approved by a fast food franchise seeking to place a restaurant on the Property. Donahue rejected that idea, stating Cicero did not want to attract the black population from Chicago to that location.

Later that month, Pesek and Delgado met with Donahue and Bruno at Bruno's office in Melrose Park. Donahue and Bruno again stated that Cicero was interested in the redevelopment of the Property, but Donahue also indicated that he wanted to purchase the Property for his personal interest and that he would utilize his authority as an official for the town to force Pesek to sell. Donahue then made an offer by writing a purchase price on a sheet of paper. Donahue told Pesek that as part of the offer, Cicero would help Pesek develop the property across the street from the location, a portion of which Pesek already owned. Donahue indicated that he would use the town's demolition/condemnation proceedings to obtain the property across the street to sell to Pesek. Pesek refused to sell his interest in the Property.

On or about May 9, 2004, a vehicle crashed into the side of the building located on the Property. Pesek immediately solicited bids and retained a contracting company to repair the damage. One contractor applied for a building permit, but Cicero refused and has continued to refuse to approve or deny that application.

Within days of the crash, Donahue contacted plaintiff Maynez, requesting the telephone number of the contract seller, William Mowery. Although Maynez refused, Donahue apparently obtained Mowery's phone number through the Village of Lyons, because Mowery then contacted

plaintiffs and told them that Donahue had called and indicated that Cicero was initiating demolition/condemnation proceedings on the Property. Within days, the Town did in fact initiate demolition/condemnation proceedings by posting a 2 foot by 2 foot notice on the Property. Additionally, several "closed by the Town of Cicero" placards were also placed on the building.

Plaintiffs claim that even after the initiation of the demolition proceedings, they have been unable to obtain a list of the alleged building code violations and have been unable to obtain building permits to lawfully effect repair of the Property. Defendant Chlada allegedly told Delgado that "we would no sooner give Pesek a permit for the subject property than we would give you a permit to perform repairs on my house."

The complaint details a number of further attempts by plaintiffs and their attorneys to obtain a list of alleged code violations and a building permit to repair those violations. All attempts have been refused by defendants, leaving plaintiffs between the proverbial "rock and a hard place."

## DISCUSSION

1. Defendants' Motion to Dismiss the Complaint

Defendants contend that plaintiffs' federal claims are barred by the Williamson ripeness doctrine. In Williamson, the Court articulated a special ripeness doctrine for constitutional property right claims which precludes federal courts from adjudicating land use disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation. Williamson, 473 U.S. at 193-94; Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000). Although Williamson was decided in a Fifth Amendment takings context, the Seventh Circuit has made

4

clear that the ripeness doctrine extends to all claims that fall within the framework of a takings claim. "[A] property owner may not avoid Williamson by applying the label substantive due process. So too with the label procedural due process. Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court." River Park, Inc. v. City of Highland Park, 23 F.3d 164, 167 (7th Cir. 1994) (Internal quotations omitted); Forseth, 199 F.3d at 368.

In their procedural due process and substantive due process claims, plaintiffs allege that defendants "utilized the building code in an effort to obtain plaintiff's property . . .." The fact that Donahue may have sought the Property personally is of no import. In Covington Court Ltd. v. Village of Oakbrook, 77 F.3d 177, 179-80 (7th Cir. 1996), the court squarely rejected any argument that a state taking for a purely private rather than public use was outside the scope of Williamson's requirements. Therefore, despite the allegations of questionable use of governmental positions by defendants, the procedural and substantive due process claims fall within the framework of a takings claim and are subject to Williamson's requirement that plaintiffs seek a final decision and pursue state court remedies. Accordingly, Counts I and II are dismissed for lack of subject matter jurisdiction.

Plaintiffs' equal protection claim in Count III basically repeats the same allegations as in the preceding counts, but also asserts that defendants' unlawful initiation of the condemnation and demolition proceedings without notice of the alleged building code deficiencies was motivated by ill will, animus and sheer vindictiveness toward plaintiffs and in retaliation for plaintiffs' unwillingness to give into defendants' intimidating tactics designed to force plaintiffs to sell.

5

Defendants argue that the equal protection claim, like the substantive and procedural due process claims, is merely a disguised taking claim subject to <u>Williamson</u>. In <u>Forseth</u>, the court recognized that "bona fide equal protection claims arising from land use decisions can be made independently from a takings claim and without being subject to <u>Williamson</u> ripeness." <u>Forseth</u>, 199 F.3d at 370. Absent a fundamental right or suspect class, a viable equal protection claim in a land use context must demonstrate "governmental action wholly impossible to relate to legitimate governmental objectives." <u>Id.</u> at 370-71. This standard is satisfied when the equal protection claim is based upon "(1) the malicious conduct of a governmental agent, in other words, conduct that evidences a spiteful effort to 'get him' for reasons wholly unrelated to any legitimate state objective, or (2) circumstances, such as prayer for equitable relief and a claim that would evaporate if the [governmental body] treated everyone equally, that sufficiently suggests that the plaintiff has not raised just a single takings claim with different disguises." <u>Id.</u> at 371 (internal citations and quotations omitted).

Plaintiffs have alleged that the condemnation/demolition proceedings were initiated maliciously, for the purpose of forcing plaintiffs to sell the Property to a private buyer, which certainly could be found to be wholly unrelated to any legitimate state objective. As in <u>Forseth</u>, plaintiffs have alleged "that a member of the governing body denied them equal protection under the law when he demanded . . . significant personal pecuniary gain by the abuse of his governmental authority." <u>Id.</u> These bare allegations are sufficient, at this stage of the proceedings, to state a viable stand-alone equal protection claim that is not subject to the <u>Williamson</u> ripeness requirement. See <u>Metz & Son, Inc. v. Village of Lyons</u>, 2002 WL 243437 (N.D. Ill. 2002). Accordingly, defendants' motion to dismiss Count III is denied. Additionally,

because defendants' motion to dismiss Counts IV (conspiracy) and V (Monell) is predicated on the dismissal of Counts I through III, the motion to dismiss Counts IV and V is also denied.

Defendants have also moved to dismiss the state law counts, suggesting that if the court dismisses the federal counts, it should decline to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3). Because the court has not dismissed all the federal counts, that suggestion is rejected.

Finally, Town President Gonzalez, Town Attorney Both, and Town Economic Development Consultant Bruno argue that the complaint fails to allege any personal involvement by them in any of the alleged misconduct. Plaintiffs respond that the complaint alleges that Pesek was told by an employee of the Cicero Code Enforcement Department that she had been under orders not to speak to Pesek. From this, plaintiffs argue that defendant Chlada was the employee's boss, and that Gonzalez was Chlada's boss. Therefore, plaintiffs argue that it can be inferred that Gonzalez gave the order not to speak to Pesek. Although not much factual detail is required to satisfy notice pleading, even for conspiracy claims, see Hoskins v. Poelstra, 320 F3d. 761, 764 (7th Cir 2002), the amended complaint contains no allegations against Gonzales except to lump him into a vaguely alleged conspiracy. The court agrees with Gonzalez that these allegations are insufficient to state a claim against him personally. Therefore, the complaint is dismissed without prejudice as to Gonzalez.

As to defendant Both, however, the complaint alleges that he sent an intimidating letter to plaintiffs' counsel, Delgado, suggesting that Both had dug up dirt on Delgado. Similarly, Bruno is alleged to have attended two meetings at which Donahue "suggested" illegal use of the building code to force Pesek to sell. Although not extensive, these allegations are enough to

7

allege Both's and bruno's personal involvement in the defendants' efforts to force plaintiffs to sell. Accordingly, the motion to dismiss Both and Bruno is denied.

2. Plaintiffs' Motion to Dismiss the Counterclaim

Defendant Cicero has filed a two count counterclaim against plaintiffs pursuant to 65 ILCS 5/11-31-1(a), (2) seeking an injunction authorizing Cicero to repair the Property and fining plaintiffs for everyday in violation. Plaintiffs move to dismiss, arguing that Cicero has failed to comply with the statutory notice requirements. As Cicero notes, however, whether it sent notice, and whether plaintiffs received notice is a question of fact incapable of resolution on a motion to dismiss. Accordingly, plaintiffs' motion to dismiss the counterclaim is denied.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint is granted in part and denied in part. Counts I and II are dismissed for lack of subject matter jurisdiction. The motion to dismiss Counts III, IV and V is denied. The entire complaint is dismissed without prejudice as to defendant Gonzalez. Both's and Bruno's motions to dismiss are denied except as set forth above. Plaintiffs' motion to dismiss the counterclaim is denied. Plaintiffs are directed to file an amended complaint consistent with the court's holding in this opinion on or before march 1, 2005. Defendants shall respond thereto by March 22, 2005. This matter is set for a report on status on March 29, 2005 at 9:00 a.m.

**ENTER:    February 11, 2005**

_____
Robert W. Gettleman
United States District Judge